UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEONARD L. LLAMAS,

      Plaintiff,

   v.

KIMBERLY A SEIBEL,

      Defendant.

Case No. 16-cv-05812-WHO

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Leonard L. Llamas seeks federal habeas relief from his state conviction of willful infliction of corporal injury on a cohabitant. Petitioner raises six claims for habeas relief: (1) the trial court erred by denying his *Faretta* motion to represent himself; (2) defense counsel rendered ineffective assistance by failing to present evidence showing the condition of the petitioner's clothing and body at the time of his arrest; (3) defense counsel rendered ineffective assistance by failing to object to inadmissible hearsay statements by bystanders at the scene; (4) defense counsel rendered ineffective assistance by failing to object to prosecutorial misconduct during closing argument; (5) the trial court coercively handled the deadlocked jurors; and (6) cumulative error. For the reasons set forth below, none of these claims have merit. Llamas's petition for habeas relief is DENIED.

## BACKGROUND

### A.     Procedural Background

In February 2012, a Santa Clara County Superior Court jury found Llamas guilty of one count of willful infliction of corporal injury on his cohabitant, Stephanie Martinez. Cal. Penal Code § 273.5(a). Llamas received a sentence of eight years in state prison. Petition ("Pet.") at 11

(Dkt. No. 1).  On June 23, 2015, Llamas's conviction and sentence were affirmed on his direct appeal in the California Court of Appeal.  Pet., Ex. D ("State Appellate Opinion, *People v. Llamas*, No. H039026") (Dkt. No. 1-1).  He raised almost all of the claims he asserts here on direct appeal, but did not raise his ineffective assistance of counsel claim for failure to introduce exculpatory photographs.  *See* Answer, Ex. D (Dkt. No. 13-12).

While his direct appeal was pending, Llamas filed a petition for a writ of habeas corpus with the California Court of Appeal, asserting all the claims he raises here except his *Faretta* claim.  *See* Answer, Ex. J (Dkt. No. 13-13).  His petition for a writ of habeas corpus was summarily denied by the California Court of Appeal on June 23, 2015, the same day as his direct appeal.  Pet., Ex. E (Dkt. No. 1-1).

Llamas then filed a petition for habeas relief before the California Supreme Court, raising his three ineffective assistance claims and a claim of cumulative error.  He did not raise the *Faretta* claim or the jury coercion claim in his Supreme Court habeas petition that he brings here as independent claims.  *See* Answer, Ex. M (Dkt. No. 13-13).  On September 30, 2015, the California Supreme Court denied Llamas's petition for review in *People v. Leonard Llamas* and summarily denied his petition for writ of habeas corpus.  Pet., Ex. F (Dkt. No. 1-1), Pet., Ex. G (Dkt. No. 1-1).  This federal habeas petition followed.

### B. Factual Background

The following factual background is taken from the order on direct appeal of the California Court of Appeal:

> In October 2011 Martinez and defendant spent approximately two hours at a club called Sabor in downtown San Jose, during which time Martinez drank two alcoholic drinks.  Martinez and defendant had been dating for over three years and she was pregnant with his child.  Police asked the couple to leave Sabor around 11:00 p.m. due to an altercation between Martinez and two or four other women.  Martinez and defendant proceeded to a second club, where they stayed until 2:00 a.m.
>
> After leaving the second club, Martinez was assaulted on the street and the identity of the assailant was disputed at trial.  According to Martinez's testimony, "those girls" with whom she had an altercation at Sabor attacked her, leaving her with a black eye and a bloody nose.  Martinez testified that defendant tried to protect her and picked her up after the girls fled.

1
2
3

A different version of the assault came from Tarrel Thomas, who testified for the prosecution at defendant's trial. Thomas testified that between 2:00 and 2:30 a.m., he and a few friends were talking on the sidewalk near the intersection of St. James Street and East Third Street in downtown San Jose. . . .

4
5
6
7
8
9
10

Defendant approached the group, asked for a cigarette, and told them "about how he had just knocked somebody over trying to help his girlfriend." When Martinez walked around the corner into Thomas's view, defendant pointed her out and referred to her as a "bitch" and " 'my baby mama.' " As defendant left to join Martinez, Thomas turned and began talking to his friends and then "heard the sound of somebody getting hit." Thomas turned and saw Martinez on the ground about 15-20 yards away, with defendant punching and kicking her and he also saw defendant hit Martinez by her hair. At the time, Martinez "[l]ooked like she was knocked out." Thomas stated that defendant was the only person he saw assault Martinez. Thomas and his friends confronted defendant, who threatened them and then eventually "walked off" before the police arrived. . . .

11
12
13
14
15
16

Robert Van Peteghem, a firefighter and paramedic for the San Jose Fire Department, was the first responder who initially treated Martinez at the scene. When Van Peteghem arrived, Martinez was lying face up surrounded by bystanders at the corner of St. James Street and East Third Street. Martinez had a hematoma on her head and was actively bleeding from her mouth and nose. During the interaction, Martinez had an "altered level of consciousness." She knew her name but had difficulty answering other questions. When Van Peteghem asked her how she received her injuries, "[s]he said her boyfriend hit her." Defendant was arrested a short time later a few blocks away.

17    Pet., Ex. D at 2–3.

18                                **LEGAL STANDARD**

19    Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court

20    may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the

21    judgment of a State court only on the ground that he is in custody in violation of the Constitution

22    or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted

23    with respect to any claim that was adjudicated on the merits in state court unless the state court's

24    adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

25    unreasonable application of, clearly established Federal law, as determined by the Supreme Court

26    of the United States; or (2) resulted in a decision that was based on an unreasonable determination

27    of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

28    "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives

                                                3

at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Petitioner alleges that the trial court erred by denying his *Faretta* motion to represent himself; that his counsel was ineffective for several different reasons; that the trial court erred by coercing the deadlocked jury; and that the cumulative errors at trial merit relief. Each of these claims for relief is addressed below.

## I. FARETTA MOTION

Llamas claims that the trial court erroneously denied his motion to represent himself at trial, in violation of his constitutional right to self-representation, and that this error was prejudicial. Pet. at 14. He asserts that he brought a timely *Faretta* motion to represent himself and that, as a result, the trial court was required to grant it. Pet. at 35. Conversely, he states that if the motion was untimely, the trial court abused its discretion by denying his motion. Pet. at 39.

Llamas brought this same claim before the state appellate court on direct appeal, which summarized the relevant facts as follows:

> After the jury was empaneled, defendant made an oral *Faretta* motion to dismiss his appointed attorney and represent himself. The court explained the potential disadvantages of waiving his Sixth Amendment right to counsel and defendant acknowledged them. Though the case had previously been in a time-not-waived posture, defendant indicated he was requesting a "time waiver" along with his request to represent himself. Defendant sought a continuance so that he could

investigate the case, which he estimated would take six months. He stated that he did not make the request earlier because he was previously unaware that Martinez would be unavailable. When the court asked defendant if he would be willing to proceed even if the court denied his request for a continuance, defendant said he would be willing to go forward but that the trial "would be a circus act ... because I would be fumbling the ball" and that his "defense would end up being a no defense."

Pet., Ex. D at 4.

The state appellate court concluded that Llamas's *Faretta* motion was untimely because he made the request after the jury was empaneled and because he did not have a reasonable excuse for not moving earlier. *Id.* at 9-10. It further held that, under California law, the trial court did not abuse its discretion in denying Llamas's motion because granting the motion would have resulted in a substantial delay of the proceedings. Because I conclude that the California Court of Appeal's decision was not clearly contrary to clearly established Supreme Court precedent, habeas relief is not appropriate on this claim.

A criminal defendant has a Sixth Amendment right to conduct his own defense. *See Faretta v. California*, 422 U.S. 806, 832 (1975). In *Faretta*, the Supreme Court held that a trial court may violate this right by denying a defendant's motion to represent himself, often called a *Faretta* motion. *Id.* at 835. However, as "*Faretta* itself and later cases have made clear [] the right of self-representation is not absolute." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). For example, in holding that Faretta's request to represent himself should have been granted, the Court relied heavily on the specific facts of his case, noting that the request was made weeks before trial, was clear and unequivocal, and that Faretta was literate, competent, and understanding. *Id.* at 835. The Court's reliance on these facts indicates that a court is not clearly required to grant a *Faretta* request under different circumstances. When a court must grant a *Faretta* motion and when it may deny one remains largely unsettled by the Supreme Court.

The Supreme Court has not clearly addressed when a *Faretta* motion must be made in order to be "timely." *See Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005). *Faretta* lays out an implicit timing element, as the Court emphasized in its discussion and holding that Faretta's motion should have been granted, in part, because it was brought "weeks before trial." *Id.* at 1060-1061; *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997). But, beyond establishing an

5

implicit timing element, and making clear that a motion brought "weeks before trial" is "timely," *Faretta*, does not provide any additional guidance on when a *Faretta* motion is timely or untimely and the Supreme Court has not clarified the issue in any subsequent decisions.  For the purposes of AEDPA review, "[b]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely."  *Marshall*, 395 F.3d at 1061.

The California Court of Appeal found Llamas's *Faretta* request untimely because it was made on the first day of trial, after the jury had been empanelled.  *See* Pet., Ex. D at 9-10. Because the timing of Llamas's request was made on much shorter notice than the "weeks before trial" in *Faretta*, the state court's conclusion that the request was untimely does not run afoul of the Supreme Court's *Faretta* ruling or any other clearly established Supreme Court precedent.  *See Marshall*, 395 F.3d at 1061 (California Court of Appeal did not violate clearly established Supreme Court precedent by concluding that a *Faretta* motion, brought on the first day of trial was untimely).  The Court of Appeal's conclusion that Llamas's request was untimely was not contrary to clearly established federal law.

Llamas argues that, even if the request to represent himself was untimely, the trial court abused its discretion by denying the request.  Llamas points to California cases for the proposition that when a *Faretta* motion is deemed "untimely" it is left to the discretion of the trial court to determine whether the request should be granted or denied.  *See People v. Lynch*, 50 Cal. 4th 693, 721-722 (Cal. Ct. App. 2010); *People v. Windham*, 19 Cal. 3d 121, 128 (Cal. Ct. App. 1997).  He argues that, under these cases, a trial court abuses its discretion by denying a *Faretta* request that is made for "a legitimate reason, where there is no request for a continuance, [and] where there is no reason to believe there would be any delay or disruption."  *See Nicholson*, 24 Cal. App. 4th 584, 593 (Cal. Ct. App. 1994).

Llamas's assertion that the trial court abused its discretion under these California precedents is not a cognizable habeas claim in federal court.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The California Court of Appeal determined, under California legal

6

precedents, that the trial court did not abuse its discretion when it denied Llamas's untimely

*Faretta* request. This decision, based on the court's application of California case law, is not

reviewable in federal court.

The Court of Appeal's rejection of Llamas's *Faretta* claim was not contrary to clearly

established Supreme Court precedent and is therefore entitled to AEDPA deference. Llamas's

request for habeas relief on the basis of this claim is DENIED.

II.     **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

Llamas raises three claims of ineffective assistance of counsel. He asserts that his trial

counsel was ineffective because he (i) failed to present evidence of the condition of his clothing

and body at the time of his arrest, (ii) failed to object to inadmissible hearsay statements by

bystanders at the scene, and (iii) failed to object to prosecutorial misconduct during closing

arguments.

In order to prevail on an ineffectiveness of counsel claim, petitioner must establish two

things. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must establish that

counsel's performance was deficient, i.e., that it fell below an "objective standard of

reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he

must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.

"Judicial scrutiny of counsel's performance must be highly deferential" and "a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *See Strickland*, 466 U.S. at 689; *Sanders v. Ratelle*, 21 F.3d 1446, 1456

(9th Cir. 1994). "There is a 'strong presumption' that counsel's attention to certain issues to the

exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter*, 131 S.

Ct. 770, 790 (2011) (citations omitted).

A.     **Failure to Present Exculpatory Photographs**

Llamas asserts that his trial counsel, Khan, provided ineffective assistance by failing to

present exculpatory photographs of Llamas's clothing and body at trial. Llamas contends that his

7

counsel's failure to present these exculpatory photos fell below an objective standard of reasonableness and was prejudicial.

Llamas raised this claim in his habeas petitions before the California Court of Appeal and the California Supreme Court. The claim was summarily denied without discussion. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011). Llamas has not met this burden.

### 1. The Police Photographs

Llamas asserts that police took photos of him and his clothing at the scene of the crime, and that his attorney was inadequate by failing to acquire and present these photos at trial. *Id.* at 45. Llamas has failed to demonstrate that his attorney acted unreasonably by failing to acquire and present the police photos.

Llamas declares that shortly after he was detained, he was taken to a gas station near the scene "where [his] hands and body and clothing were photographed by a police officer." Pet. Ex. B. ¶ 4. This account is supported by the police record in the case, which indicates that "photographs were taken of Mr. Llamas" as the scene. Reporter's Transcript ("RT") at 338-340 (Dkt. No. 13-9).

Llamas's attorney took steps to acquire these photos. In his *in limine* motions submitted before trial, Khan asked the court to order the prosecution to produce "all photographs, witness statements, potentially exculpatory evidence, documents, witness names . . . and physical evidence in advance of opening statement." *See* Clerk's Transcript Vol. 1 ("CT Vol. 1") at 76 (Dkt. No. 13-3). The trial court declined to specifically rule on the motion, noting that the prosecution was already legally obligated to provide the requested information. *See* RT at 38-39. [1] However, the court noted that the motion was a good reminder for the parties to comply with their disclosure

---

[1] *See also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution is required to produce any material evidence, favorable to the defendant, upon request); Cal. Penal Code § 1054.1 (under California law, a prosecuting attorney must produce all relevant evidence that is in the prosecutor's custody, or which the prosecutor knows is in the custody of the investigating agencies to the defendant, or his attorney).

obligations.

The prosecution never produced any photographs, possibly because there were no photographs to produce. Khan declares that he was "never made aware that any photos of Mr. Llamas actually existed." Pet. Ex. A ¶ 5. At trial, Officer Garlit testified that he had not seen any photographs of Llamas and had no personal knowledge that any photographs had actually been taken. RT 338-340. Although Llamas declares that the police took photos of him, and the police reports support this, he has never been able to confirm that the prosecution actually had photographs of his clothing and hands taken at the scene.

Llamas asserts that Khan did not make a reasonable effort to acquire the police photos because he "did not take any steps to enforce the discovery order requiring that they be produced." Pet. at 49. This argument is not persuasive. As the trial court recognized, Khan's *in limine* request for the photos mirrored the disclosure obligations the prosecution already had. Because the prosecution had an existing obligation to produce any relevant photographs, Khan reasonably could have taken no steps to obtain the photos and simply relied on the prosecution to produce them, as required by law. Despite this, Khan took the extra step of filing an *in limine* motion, specifically requesting this evidence, and reminding the prosecution to comply with its disclosure obligations. Llamas asserts that after Khan filed his *in limine* motion, he acted unreasonably by failing to take additional steps to "enforce the discovery order." But, as the record shows, there was no discovery order; the prosecution was obligated by law, not court order, to produce any relevant photos it had. And Khan took steps to enforce this existing legal obligation by filing the *in limine* motion before trial. It is not clear what additional steps Khan could have taken to obtain the photos beyond duplicating the legally superfluous request he had already made.

On this record, the California courts reasonably could have concluded that Khan's efforts to obtain the photos fell within the range of adequate legal assistance and that Khan's performance was not deficient. Llamas has failed to show there was no reasonable basis on which the California courts could have denied this claim.

### 2. Photos Taken by Investigator

A defense investigator went to the jail and photographed the clothing that Llamas was

1   wearing at the time of his arrest. Pet. Ex. A ¶ 5. Llamas argues that his trial counsel was

2   ineffective for failing to introduce these photographs at trial. But the record demonstrates that the

3   California courts could have reasonably concluded that Khan declined to introduce these

4   photographs for strategic reasons and that his decision was within the range of reasonable

5   performance.

6       Khan acknowledges that his investigator took photographs of Llamas's clothing at the

7   county jail and that these photographs show that Llamas did not have visible blood on his clothes

8   at the time he was arrested. Khan declares that he did not use the investigator to authenticate and

9   introduce the photos because he wanted to "exclude any evidence that Mr. Llamas was in custody

10  and because [the] investigator had no personal knowledge that those were in fact the clothes worn

11  by Mr. Llamas from the time of his arrest." Pet. Ex. A ¶ 5. Khan also states that he cross-

12  examined the police witnesses to "confirm that Mr. Llamas did not have any blood on his person

13  or any marks on his hands consistent with his alleged beating of Mr. Martinez" and that he

14  believed this evidence "would be as probative as pictures of Mr. Llamas' clothing." *Id.*

15      Llamas argues that Khan's tactical decision was patently unreasonable. He asserts that

16  Khan should not have withheld exculpatory evidence simply to avoid emphasizing that Llamas

17  was in prison because the jury was already aware that Llamas had been arrested and had been

18  instructed not to consider this in assessing guilt. He adds that Khan's belief that the police

19  testimony would be comparable was unreasonable because "there is a vast and qualitative

20  difference between officers testifying that they *did not recall* seeing blood on petitioner's clothing

21  . . . and introducing vivid photographs showing not a speck of blood on the bright white band of

22  material covering petitioner's pants pockets and belt line." Corrected Traverse at 15 (Dkt. No.

23  15).

24      Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial

25  conduct on strategic considerations; (2) counsel makes an informed decision based upon

26  investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v.*

27  *Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). "In evaluating the reasonableness of counsel's

28  actions, a reviewing court must consider the circumstances at the time of counsel's conduct, and

1   cannot second-guess counsel's decisions or view them under the fabled twenty-twenty vision of

2   hindsight." *Edwards v. Lamarque*, 475 F.3d 1121, 1127 (9th Cir. 2007).

3       The California courts reasonably could have concluded that Khan made a reasonable

4   tactical decision to not introduce the investigator photos. As Khan declares, he chose not to

5   introduce the investigator photos because (1) he did not want to present evidence emphasizing that

6   Llamas had been in custody; (2) his investigator would not be able to fully authenticate the photos;

7   and (3) he believed he could get comparable evidence regarding the absence of blood on Llamas's

8   clothes by cross-examining the police witnesses. Pet. Ex. A ¶ 5.

9       It is clear that Khan faced a trade-off with regard to the investigator photos: they had

10  exculpatory value in that they showed a lack of blood on Llamas's clothes at the time of his arrest,

11  but they could also be prejudicial as they would remind the jurors that Llamas had been arrested

12  and booked in jail. Khan made a tactical decision to forgo introducing the photos and to instead

13  attempt to illicit similar evidence from the police officers on cross-examination, who could testify

14  that Llamas did not have blood on his clothes following the attack. Llamas now argues that Khan

15  weighed these issues incorrectly, made the wrong choice, and should have introduced the photos.

16  But he has failed to demonstrate that Khan's decision was objectively unreasonable. The

17  California courts could have concluded that Khan made a reasonable tactical decision, based on

18  the circumstances of the case, when he decided not to introduce the investigator photos and to

19  instead illicit similar evidence by cross-examining the officers. This was within the wide range of

20  adequate legal assistance under *Strickland*. Llamas has failed to show there was no reasonable

21  basis on which the California courts could have denied this claim.

22      Llamas's ineffective assistance claim based on his counsel's failure to obtain and introduce

23  exculpatory photos is DENIED.

24      **B.      Failure to Object to Hearsay Statements**

25      Llamas claims that his trial counsel was ineffective by failing to object when the

26  prosecution elicited hearsay testimony from Officer Majors and Officer Garlit in reference to out-

27  of-court statements by bystanders. Pet. at 56. The last reasoned decision on this claim is the

28  Court of Appeal's decision on direct appeal. I conclude that the Court of Appeal did not

unreasonably apply the *Strickland* standard in denying this claim.

### 1. Officer Majors's Testimony

Llamas argues that his trial counsel was ineffective because he failed to object to a series of questions directed to Officer Majors in which she was asked whether she received any information that Martinez was assaulted "by anyone other than the defendant." The Court of Appeal concluded that trial counsel had a reasonable tactical justification for not objecting because an affirmative response from Majors would have been exculpatory for Llamas, and a negative response would have meant that the questions did not call for hearsay. *Id.* at 16. The court's conclusion does not reflect an unreasonable application of the *Strickland* standard.

The relevant part of Officer Majors's trial testimony was as follows:

> PROSECUTOR: As part of your investigation, did you ever investigate any allegation that Ms. Martinez was assaulted by a group of females?
>
> OFFICER MAJORS: No.
>
> PROSECUTOR: Did you ever get that information?
>
> OFFICER MAJORS: No, nobody ever said anything like that.
>
> PROSECUTOR: Did you get any information that Ms. Martinez was assaulted by anyone other than the defendant?
>
> OFFICER MAJORS: No I didn't.
> . . .
>
> PROSECUTOR: Did you get any information that Ms. Martinez was assaulted by anyone other than the defendant?
>
> OFFICER MAJORS: No I did not.
>
> PROSECUTOR: What about by a group of males, not including the defendant?
>
> OFFICER MAJORS: No I did not.

RT at 266-268

As the Court of Appeal reasonably concluded, none of Officer Majors' testimony was impermissible hearsay. Officer Majors was asked multiple times whether she received any information that a group of women or men, or some individual, "other than the defendant" assaulted Ms. Martinez. She testified that "no" she did not receive any such information. Hearsay

is an out-of-court statement offered for the truth of the matter asserted. *See* Cal. Evid. Code § 1200(a). Testimony regarding the *absence* of a statement is not hearsay.

Llamas argues that Officer Majors's testimony "clearly related to the content of statements made by witnesses at the scene" and emphasizes that she was asked multiple times whether she received any information regarding whether "anyone other than the defendant" assaulted Martinez. Pet. at 61. Llamas's argument seems to be that by answering "no," Majors was implicitly testifying that she *was* told that *Llamas* assaulted Martinez and that this implicit statement is hearsay. This argument is not persuasive. Because of the way the prosecutor's questions were formulated, a "no" answer from Majors did not mean that she *had* received information that Llamas assaulted Martinez, only that she *had not* received information that anyone else had. Majors was never asked if she received any information that Llamas had assaulted Martinez and never testified that she did. Further, even if Martinez's "no" answers implied that she *had* received some information that Llamas assaulted Martinez, this "information" would not necessarily be a statement; "information" could include other forms of evidence. Contrary to Llamas's assertion, the prosecution's questions did not clearly relate to the "content of statements made by witnesses at the scene" and Majors's testimony was not hearsay. Trial counsel acted reasonably by not making a hearsay objection to this testimony. The California Court of Appeal's conclusion that trial counsel's performance was adequate was not an unreasonable application of *Strickland*.

### 2.    Officer Garlit's Testimony

Llamas argues that his trial counsel was ineffective by failing to object to hearsay statements elicited from Officer Garlit.

As a preliminary issue, the parties dispute what state court decision is relevant for this court's AEDPA review: Llamas asserts that I should review the Court of Appeal's decision on direct appeal while Respondent asserts that I should review the California Supreme Court's summary denial. "When more than one state court has adjudicated a claim, we analyze the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). In this case, the last reasoned decision is the Court of Appeal's decision on direct appeal. Although the Court of

13

Appeal and California Supreme Court also adjudicated and denied these claims, they did so in summary denials, without any discussion. I will apply the AEDPA standard to the California Court of Appeal's decision on direct appeal.

The Court of Appeal concluded that Khan's failure to object to certain questions during Officer Garlit's direct examination was objectively unreasonable, but that this error did not cause any prejudice to Llamas given the strength of the other evidence presented at trial. The Court of Appeal's analysis does not demonstrate an unreasonable application of *Strickland*.

The relevant part of Officer Garlit's trial testimony was as follows:

> PROSECUTOR: When you had your conversation with Ms. Martinez, did she ever tell you that she was assaulted by a group of between four and six individuals?
>
> OFFICER GARLIT: No, sir.
>
> PROSECUTOR: Did she ever tell you she was attacked by two to four girls?
>
> OFFICER GARLIT: No, sir.
> . . .
>
> PROSECUTOR: During your conversation with Ms. Martinez, did you tell her that you had witnesses who said that she was hit in the face by the defendant?
>
> OFFICER GARLIT: Yes, sir.
>
> PROSECUTOR: And when you told her that, did she offer at that time that she had been assaulted actually by a group of people?
>
> OFFICER GARLIT: No, she did not.
>
> PROSECUTOR: Just so I'm clear. I'm not asking – you are speaking with her in this interview and you tell her that you have witnesses that said that the defendant hit her in the face?
>
> OFFICER GARLIT: Yes.
>
> PROSECUTOR: Okay. And when you told her that, did she appear to be responsive to the question, that she understood the statement?
>
> OFFICER GARLIT: Yes.
>
> PROSECUTOR: When you made that statement, did she in turn at that time say anything along the lines that actually I was assaulted by two to four women?
>
> OFFICER GARLIT: No.

14

PROSECUTOR: Or did she say she was actually assaulted by maybe a group of people?

OFFICER GARLIT: No.

PROSECUTOR: Anything along those lines?

OFFICER GARLIT: No.

PROSECUTOR: During the course of your investigation, were you made aware that there were eyewitnesses that said she was assaulted by the defendant?

OFFICER GARLIT: Yes, sir.

PROSECUTOR: Was there any information given to you that she was actually assaulted or she may have been assaulted by a group of people?

OFFICER GARLIT: No.

RT 323-324.

In addition, a recording of Garlit's interview with Martinez was played. In the recording, Garlit tells Martinez that "a couple of witnesses saying that [Llamas] hit you in the face," to which she replies "no idea." RT 326, CT 221.

First, although the Court of Appeal ultimately found Khan's failure to bring a hearsay objection based on these questions was unreasonable, there are several reasons why Khan could have acted reasonably by failing to object to these questions on the basis of hearsay.

Many of the statements Llamas objects to were not hearsay because they were not offered for the "truth of the matter asserted" but to show their effect on Ms. Martinez. At the preliminary hearing, Martinez testified that Llamas did not attack her and that the police did not give her an opportunity to explain that she was attacked by a group of girls, not Llamas. The prosecution introduced testimony from Officer Garlit to undermine this account. Garlit testified that at the scene he asked Martinez if she knew who had attacked her and she said she did not. Garlit then pushed Martinez, telling her that he had witnesses saying that Llamas attacked her. If Llamas was indeed misidentified and Martinez knew she had actually been attacked by a group of girls, her expected response to this kind of statement would be to defend her boyfriend and inform Garlit who the real attackers were. Martinez's actual response of "no idea" and the fact that she did not

tell Garlit that she was attacked by a group of girls at the scene undermines her later statements about what happened. In the context of this interview, Garlit's statement that "a couple of witnesses saying that [Llamas] hit you in the face" was not offered for its truth, but to demonstrate that Garlit made this statement to Martinez and to show Martinez's response. The statement would be relevant and probative even if it was not true, since it has independent value by giving context to Martinez's reaction.

Out of court statements used to show the effect on a listener are not hearsay. *See People v. Ervine*, 47 Cal. 4th 745, 775 (2009) (statements offered "to explain what the officer may have done in response to this information" were not hearsay under California law). Because the statements regarding what Garlit told Martinez in the interview were offered to show their effect on Ms. Martinez, and not for their independent truth, they were not hearsay. Khan could have had a reasonable basis for not objecting on hearsay grounds to the statements made in the context of Garlit's interview with Martinez.

Llamas only objects to one other question and response. The prosecutor asked Garlit "During the course of your investigation, were you made aware that there were eyewitnesses that said she was assaulted by the defendant?" Garlit responded, "Yes, sir." There is no apparent non-hearsay purpose for this testimony. As the Court of Appeal concluded, there was no tactical reason not to object to this question. The question is whether Khan's failure to object to this statement was prejudicial under *Strickland.* The Court of Appeal concluded that it was not given the strength of the other evidence presented.

That decision and analysis does not demonstrate an unreasonable application of *Strickland*. As the Court of Appeal pointed out, there was other strong evidence presented in this case that Llamas was the attacker. An eyewitness, Thomas, testified at length about witnessing the attack from approximately 20 yards away while he was outside with a group of friends. In addition, the prosecution entered Martinez's statement to paramedics that "my boyfriend attacked me." This evidence was only rebutted by Martinez's later inconsistent statement that she was attacked by a group of girls.

Llamas claims that the evidence that he was the attacker was "weak" because there was

only one eyewitness, the assault took place at night, and the eyewitness had been drinking. As just discussed, there were two eyewitnesses, Thomas and Martinez, and Martinez was unlikely to misidentify her own boyfriend. Further, although the assault took place at night, Thomas testified that he and his friends spoke to Llamas up close, that Llamas identified Martinez as his girlfriend, and that, just a few minutes later, he witnessed Llamas assault Martinez from 20 yards away. Thomas's testimony indicates that, even though it was dark, he was able to observe Llamas up close, specifically knew that Llamas was Martinez's boyfriend, and was close by when the assault took place. Although Thomas testified that he had been drinking that night, he also testified that he had not had anything to drink for over an hour and was not heavily impaired at the time of the assault. The Court of Appeal's conclusion that the evidence regarding identity was strong was not unreasonable.

Garlit's testimony that he was "made aware that there were eyewitnesses that said [Martinez] was assaulted by [Llamas]" adds little to the evidence otherwise presented. The jury was already aware that there was at least one eyewitness who had identified Llamas, as they had heard Thomas's testimony and account of the attack. Garlit's testimony, indicating that at least one other person confirmed this story, offers only minor additional support for Thomas's first-hand account. Further, the jury had heard testimony from Thomas that he was with his friends when he saw the attack and the officers and paramedic testified that there were a number of people at the scene when they responded. The jury was therefore aware that Thomas did not witness this attack alone. They were also aware that none of these bystanders identified another assailant as the attacker. With this information, the jury could have reasonably inferred or guessed that at least one other person confirmed Thomas's story to the police. Garlit's statement, making this explicit, adds relatively little.

The state appellate court's conclusion that Khan's failure to object to the Garlit testimony was not prejudicial was reasonable. In the face of Thomas's eyewitness testimony and Martinez's own statement to the paramedic, it is not reasonably probable that Garlit's statement that he was made aware of "witnesses" identifying Llamas as the attacker changed the outcome at trial. The California Court of Appeal's rejection of Llamas's claim that his trial counsel was ineffective

for failing to object to hearsay evidence was reasonable and is therefore entitled to AEDPA deference. This claim is DENIED.

### C.       Failure to Object to Prosecutorial Misconduct

Llamas argues that trial counsel was ineffective for failing to object to four instances of prosecutorial misconduct during closing arguments. He identifies (1) the prosecutor's reference to Llamas's failure to "accept the responsibility of his actions," (2) the prosecutor's urging that the jurors not to be "part of the tragedy of Ms. Martinez," (3) the prosecutor's implication that Martinez did not appear at trial because she knew Llamas was guilty, and (4) the prosecutor's claim that defense counsel had made a "blatant misrepresentation" of the jury's duty. Llamas raised these claims on direct appeal as both prosecutorial misconduct claims and ineffective assistance claims. The Court of Appeal rejected each of these claims on direct appeal, and that decision is the last reasoned decision to address these claims. The Court of Appeal's decision does not reflect an unreasonable application of clearly established federal law.

### 1.       Failure to Take Responsibility

Llamas asserts that his trial counsel was ineffective for failing to bring an adequate objection to the prosecutor's statement in closing argument that "because [Llamas] would not be man enough to accept the responsibility of his actions, we would have to go through this exercise of who was the person who did it." Llamas asserts that this statement constituted prosecutorial misconduct because it criticized Llamas for exercising his Sixth Amendment right to trial. Llamas's trial counsel did object to this statement, but Llamas asserts that his counsel was deficient because he did not bring a more substantial objection identifying the statement as misconduct and did not seek an admonition.

On direct appeal, petitioner brought this claim as both a prosecutorial misconduct claim and as an ineffective assistance claim. In rejecting it, the court did not directly address whether counsel's conduct was deficient under *Strickland* but noted that counsel had objected to this claim and preserved it for appeal. Pet. Ex. D. at 20. The court acknowledged that counsel did not request an admonition, but found this conduct excusable because, given that the objection had already been overruled, the request for an admonition would likely be futile. *Id.* Upon concluding

that the prosecutorial misconduct claim was preserved for appeal, the court went on to consider whether the misconduct was prejudicial under the standard for prosecutorial misconduct and concluded that "beyond a reasonable doubt the error complained of did not contribute to the verdict." *Id.* at 20-21.

Llamas now argues that the Court of Appeal's prejudice analysis was unreasonable. But its analysis was part of petitioner's prosecutorial misconduct claim, not his ineffective assistance claim. Because petitioner did not raise his prosecutorial misconduct claim here, I cannot review the Court of Appeal's analysis of it.

The Court of Appeal did not reach a clear decision on the ineffective assistance claim, but implicitly rejected it. This decision was reasonable. The Court of Appeal's discussion indicates that the court concluded that trial counsel's performance was not deficient. The court noted that trial counsel properly objected to the prosecutor's statement but that the objection was overruled. It then concluded that counsel's failure to seek an admonition was excusable because the request likely would have been futile. Given this analysis, it appears that the Court of Appeal concluded that trial counsel's conduct was not deficient with regard to this statement. Trial counsel could have had a tactical reason for not making an additional objection or seeking an admonition after his first objection was overruled. A subsequent objection would likely have been overruled and might have played poorly with the jury. Further, he had already objected sufficiently to preserve the claim for appeal. This decision was not unreasonable.

The Court of Appeal's implicit rejection of this ineffective assistance claim does not demonstrate an unreasonable application of *Strickland*. The court could have had a reasonable basis for concluding that trial counsel's performance was not objectively unreasonable.

### 2. The Tragedy of Ms. Martinez

Llamas argues that his trial counsel was ineffective for failing to object to the prosecutor's comments, urging the jury not to be part of the "tragedy" of Ms. Martinez. He asserts that this statement amounted to prosecutorial misconduct because the prosecutor was attempting to arouse the passions and prejudices of the jury, that his counsel had no reasonable basis for not objecting, and that the error was prejudicial.

On direct appeal, the Court of Appeal concluded that, because Khan had not objected to this statement, he had not preserved the misconduct claim for appeal and Llamas could only prevail if he could show that Khan's performance was ineffective under *Strickland*. Pet. Ex. D at 21. Although the court concluded that the statement was "arguably improper" it rejected Llamas's ineffective assistance claim, concluding that Khan could have had a tactical reason for not objecting, and that regardless, the failure to object was not prejudicial. *Id.* at 22.

The Court of Appeal's rejection of this claim does not demonstrate an unreasonable application of *Strickland*. As the court noted, counsel could have had a tactical reason for not objecting to the statement, such as not wanting to highlight it. Further, as Khan explained in his declaration, he may have also believed that the objection would have been overruled and futile since, in his experience, judges rarely sustain objections to argument during closings. This belief would have been supported by the fact that the judge had overruled Khan's earlier objection to the prosecutor's comment about Llamas failing to take responsibility for his actions. Finally, as Khan also declares, his general strategy was to address the prosecutor's comments in his own closing, rather than to object. *See People v. Kelly*, 1 Cal. 4th 495, 520 (1992) ("Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight."); *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct.").

The Court of Appeal reasonably concluded that counsel's decision not to object was a trial tactic, and not objectively deficient performance. The Court of Appeal's decision was not an unreasonable application of *Strickland*.

### 3. The Implication that Ms. Martinez did not appear because she knew the petitioner was guilty

Llamas argues that his trial counsel was ineffective for failing to object to the prosecutor's statement that "even Stephanie Martinez knows who assaulted her. That's why she's not here." Pet. 64. He asserts that this statement amounted to prosecutorial misconduct because "It is

misconduct [for a prosecutor] to suggest to the jury, in arguing the veracity of a witness, that the prosecutor has information undisclosed to the trier of fact bearing on the issue of credibility, veracity or guilt." *People v. Padilla*, 11 Cal. 4th 891, 946 (1995).

The California Court of Appeal rejected this claim, concluding that the prosecutor's statement was not misconduct and was a "fair comment." As it explained, "[t]hat Martinez chose not to attend the trial despite being ordered to do so because she did not want to risk incriminating her cohabitant who was the father of her child was a reasonable inference to be drawn from the evidence presented to the jury, and the trial counsel was not deficient for not objecting." Pet. Ex. D at 23. The Court of Appeal's conclusion that trial counsel was not deficient was reasonable.

As the Court of Appeal concluded, the jury was presented with evidence from which it could have drawn the reasonable inference that Martinez did not appear to testify because she believed Llamas was guilty. This evidence included: her spontaneous declaration to the paramedic identifying Llamas as the attacker; she only testified that she was attacked by a group of girls after the fact; she was in a romantic relationship with Llamas, was living with him, and was pregnant with his child; and, she did not appear for trial to testify, despite being ordered to appear by the court. From this evidence they could have drawn the inference that Martinez believed Llamas was the attacker, that she did not want to testify against him, and that she did not appear in court so she would not have to testify.

Llamas argues that the prosecutor's comment suggested that he had information concerning "why she failed to appear" that was not presented to the jury. Although it is misconduct for a prosecutor to suggest that he has information not disclosed to the trier of fact that is relevant to a witness's credibility, veracity, or guilt, the prosecutor's statement here does not suggest that he had any additional information regarding the reason for Martinez's absence. Llamas suggest that the prosecutor implied that he knew that Martinez's absence was willful, but a reasonable jury would know that the prosecutor, just like the members of the jury, can only guess as to any individual's state of mind or motivation based on the facts before them. This case is not like those Llamas cites in which the attorneys made insinuations about facts that were not in evidence, rather than inferences based on the evidence presented. *See People v. Perez*, 58 Cal. 2d

229, 240-241 (1962) (suggestion that witness testified a particular way because he had been threatened was improper); *People v. Woods*, 146 Cal. App. 4th 106, 113 (2006) (suggestion that witness was credible because no evidence was presented that he had a disciplinary record was improper). Here, the prosecutor did not insinuate that he had any additional facts relevant to Martinez's absence and a reasonable jury would have understood that he was merely inferring the reason for Martinez's absence based on the same facts presented at trial. Llamas has failed to demonstrate that the prosecutor's statement regarding the reason for Martinez's absence was misconduct.

The Court of Appeal reasonably concluded that the prosecutor's statement regarding Martinez's absence was not misconduct and that, as a result, trial counsel reasonably did not object to it. The Court of Appeal's conclusion that trial counsel's performance was not deficient under *Strickland* was not unreasonable.

### 4. Prosecutor's comment that defense counsel made a "blatant misrepresentation" of law

Llamas argues that his trial counsel was ineffective for failing to object to the prosecutor's claim that Khan had made a "blatant misrepresentation" of the law in his own closing arguments. The Court of Appeal rejected this claim, concluding that the prosecutor's statement was improper but that Khan may have had a tactical reason for not objecting, such as wanting to avoid the appearance of a petty squabble. It also found that the statement was not prejudicial. The Court of Appeal's decision was not an unreasonable application of *Strickland*.

Llamas laments that this conclusion was unreasonable because Khan's declaration demonstrates that he does not remember why he did not object to this statement. Since Khan does not remember why he did not object, the Court of Appeal acted reasonably by guessing why he might have reasonably chosen to stay silent and its conclusion is not inconsistent with Khan's declaration. Llamas contends that, even if this was Khan's rationale for not objecting, it was not reasonable because "[c]hoosing not to object when the prosecutor repeatedly engaged in misconduct during closing argument to 'avoid the appearance of a petty squabble' is not a rational tactical decision." Pet. At 83. But Llamas does not cite to any case law in support of this

argument. As many cases recognize, it is common and usually reasonable for an attorney to refrain from making objections during closing arguments. *See United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993). Further, it is generally improper for reviewing courts to second-guess trial counsel's tactics regarding when to make objections since, "in the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings." *People v. Frierson*, 53 Cal. 3d 730, 749 (1991). The Court of Appeal reasonably concluded that Khan could have had a legitimate tactical reason for not objecting to the prosecutor's statement and was not deficient. The Court of Appeal's decision does not reflect an unreasonable application of *Strickland*.

The Court of Appeal reasonably rejected Llamas's claim that his trial counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments. The court's conclusion that trial counsel was not ineffective was not an unreasonable application of *Strickland* This analysis is entitled AEDPA deference and Llamas's habeas claim is DENIED.

## III.   COERCION OF DEADLOCKED JURY

Llamas raises one claim of instructional error. He claims the trial court's "*Allen* charge"[2] to the deadlocked jury was impermissible because it was unduly coercive. Pet. at 16–17. The facts were summarized by the state appellate court as follows:

> At about 4:45 p.m. [, after deliberating for just over a day], the court learned that the jury was still having difficulty reaching a verdict and discussed the matter on the record. The court thanked the jury for its efforts and noted "a lot of resources and a lot of your time have been put into this so far." The court also inquired regarding the split of jurors and the foreperson informed him they were split nine to three, without disclosing which side was which. The court instructed the jurors to think about the case and expressed hope that they would be able to reach a verdict after "a good night's sleep . . . or a good breakfast." The court then stated, "at some point hopefully you will reach a verdict, but if you don't, then at that point we'll take it from there." Once the court released the jury for the day, defense counsel objected to the court's treatment of the jury deadlock, arguing that the court should have asked the jurors whether there was a reasonable possibility that the jury could reach a verdict before ordering them to continue deliberating. The jury continued deliberating the next morning and reached a

---

[2] An "*Allen* charge" is a jury instruction that intends to prevent a hung jury and is typically given after the jury is deadlocked. *United States v. Wills*, 88 F.3d 704, 716-17 (9th Cir. 1996).

23

verdict after lunch, finding the defendant guilty.

Pet., Ex. D at 7.

The Court of Appeal rejected this claim, holding, after an extensive review of the facts and the issues, that there was "no abuse of discretion and no coercion of the jury to reach a verdict." *Id.* at 27. It determined that the trial court's inquiry into the numerical division of votes was permissible because the court did not ask how many votes were on each side, *id.* at 26; held that the court's language urging all jurors to take a "fresh look" at the case and "hop[ing]" they would reach a verdict was not coercive, *id.*; emphasized that the trial court did not separately encourage jurors in the minority to reconsider their position and actually reminded the jurors that they did not have to reach an agreement, *id.* at 27; and noted that, while the court referenced the resources that had been put into the case, it did not discuss the " 'expense and inconvenience of a retrial' to encourage a verdict," *id.*

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). The Supreme Court precedent regarding what makes an *Allen* charge coercive is relatively sparse, but suggests that a court must consider the instruction "in its context and under all circumstances" in assessing its coercive impact. *Lowenfield*, 484 U.S. at 237. Given the minimal relevant precedent on this issue, and the deference required under AEDPA, a federal court assessing a coercive *Allen* instruction claim under AEDPA asks only two questions: "(1) if the California Court of Appeal looked at the totality of the circumstances in determining whether the instruction given at [the defendant's] trial was coercive and (2) if its determination that it was not was objectively reasonable." *Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011). "As long as the California Court of Appeal reviewed all the facts and considered the supplemental charge in its context and under all the circumstances in holding that it was not coercive, then, in the absence of Supreme Court authority to the contrary, this Court must give deference to the California Court of Appeal's judgment." *Id.*

The Court of Appeal's discussion demonstrates that it reviewed the trial court's supplemental charge in context and looked at the totality of the circumstances as required by *Lowenfield* to determine whether the instruction was coercive. Llamas asserts that the Court of

Appeal's determination is clearly contrary to *Lowenfield*, in which the Supreme Court found that a similar supplemental charge was *not* coercive. *See Lowenfield*, 484 U.S. at 237. He argues that the supplemental charge offered in this case had a number of allegedly coercive qualities that were not present in *Lowenfield* and that, as a result, the Court of Appeal should have found the instruction coercive. While Llamas has identified factors that distinguish the instruction in this case from the one in *Lowenfield*, at most this demonstrates that his coercive instruction claim is not clearly barred by *Lowenfield*. It does not demonstrate that the Court of Appeal's decision was contrary to *Lowenfield* or any other clearly established Supreme Court precedent. The Court of Appeal's analysis is not in conflict with clearly established federal law.

The state appellate court's rejection of this claim was reasonable and is therefore entitled to AEDPA deference. This claim is DENIED.

IV.     **CUMULATIVE PREJUDICE**

Llamas asserts that even if none of the errors he has identified were sufficiently prejudicial to warrant habeas relief on their own, the cumulative effect of these errors caused him sufficient prejudice to warrant relief. Pet. at 98.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by the prosecution). Generally, a cumulative error claim is successful only when the cumulative errors share some critical thread or symmetry so that, in conjunction, they amplify each other in effect. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (state court unreasonably rejected cumulative error claim where all of the improperly excluded evidence supported the only contested issue raised by the defense, and thus, in combination, undermined the defense); *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2001) (reversal was unwarranted where errors were unrelated and did not have a "synergistic effect").

The Court of Appeal reasonably concluded that there was no cumulative prejudice based

on the errors it identified in petitioner's trial.[3]  In its discussion, the Court of Appeal determined that there were some errors in Llamas's trial, including trial counsel's failure to object to Officer Garlit's testimony and, potentially, trial counsel's failure to object to certain comments during closing arguments.  The Court of Appeal held that, despite these errors, there was no prejudice, cumulative or otherwise, because the eyewitness testimony from Thomas and Martinez's spontaneous declaration were strong evidence that Llamas was the attacker.

The Court of Appeal's analysis does not reflect an unreasonable application of federal law. The errors that the Court of Appeal identified do not share a critical thread.  One related to the failure to object to hearsay evidence of identity; one related to the failure to object to the prosecutor's potentially improper statements playing to the jury's passions; and one related to the failure to object to the prosecutor's disparaging remarks about defense counsel.  These potential errors are unrelated and do not have any synergistic prejudicial effect in combination.  The Court of Appeal's rejection of this claim does not demonstrate an unreasonable application of clearly established federal law and is entitled to AEDPA deference.  This claim is DENIED.

## CONCLUSION

The state courts' adjudication of Llamas's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did

---

[3] The cumulative prejudice claim Llamas brought on direct appeal was not identical to the one he raises now because his direct appeal claim did not include his ineffective assistance claim regarding exculpatory photographs.  The Court of Appeal therefore did not consider whether trial counsel's failure to introduce the photographs of petitioner's clothes had any prejudicial effect or contributed to a cumulatively prejudicial effect when it denied this claim on direct appeal. Petitioner then brought cumulative prejudice claims in the habeas petitions he filed in the Court of Appeal and California Supreme Court.  These petitions included the exculpatory photographs claim, but excluded his *Faretta* claim.  The result is that no state court reviewed the precise combination of claims that petitioner raises here to assess their cumulative prejudice.  Because the only reasoned decision on petitioner's various cumulative prejudice claims is the Court of Appeal's decision on direct appeal, I will review that decision here.  Although there is no clear case law on this issue, because the Court of Appeal did not consider the impact of petitioner's exculpatory photographs claim in denying the cumulative prejudice claim I cannot reasonably consider the possible effect of the exculpatory photographs claim in assessing whether the Court of Appeal's decision was unreasonable.  I must assess the Court of Appeal's decision based on the claims it actually reviewed.  Nevertheless, if the Court of Appeal had reviewed the exculpatory photograph claim on direct appeal, the claim likely would have had no impact on the cumulative prejudice analysis as the court could have reasonably concluded that trial counsel was not deficient in failing to introduce the photographs at issue.

they result in decisions that were based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Llamas may seek a certificate of appealability from the Ninth Circuit. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: August 31, 2017



William H. Orrick
United States District Judge